# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN RANDALL McINTYRE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:09-cv-2387-RDP** |
| | } | |
| **CHEMICAL LIME COMPANY,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

The court has before it the January 24, 2011 Motion for Summary Judgment (Doc. #16) filed by Defendant Chemical Lime Company ("Chemical Lime").  The motion (Doc. #16) has been fully briefed (Docs. #16-18, 21, 22) and was deemed submitted, without oral argument, on March 8, 2011. For the reasons outlined below, the court finds that the Motion for Summary Judgment (Doc. #16) is due to be granted.

## I.     Procedural History

Plaintiff John Randall McIntyre commenced this action by filing a complaint in this court on November 25, 2009, alleging that his former employer, Defendant Chemical Lime, violated the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA" or the "Act") by terminating his employment (1) in retaliation for exercising and (2) in interference with[1] his rights under the Act. Defendant's January 24, 2011 motion (Doc. #16) asserts that Plaintiff's claim for FMLA retaliation fails for three reasons.  First, Defendant asserts Plaintiff cannot prove a *prima facie* case for FMLA retaliation.  Second, Defendant claims it had a legitimate, non-retaliatory reason for its decision to

---

[1] Although Plaintiff has not specified which FMLA theory he is advancing in this case, the court will analyze both.  *See* footnote 9, *infra*.

terminate Plaintiff's employment. Third, Defendant argues that Plaintiff cannot prove that Defendant's legitimate, non-discriminatory reason is a pretext for retaliation. Defendant also contends that Plaintiff's claim for FMLA interference fails for three reasons. First, Defendant argues that Plaintiff would have been discharged for failing a drug and alcohol test regardless of whether he took leave under the FMLA. Second, Plaintiff has no greater right to reinstatement or to other benefits or conditions of employment than if he had been continuously employed during the FMLA period. Finally, Defendant notes that courts in recent decisions have found no FMLA interference when a plaintiff was terminated for failing a drug and alcohol test shortly after taking FMLA leave. (Doc. #17 at i).

On January 24, 2011, Defendant filed a brief (Doc. #17) and evidence[2] (Doc. #18) in support of its motion. Plaintiff filed a response (Doc. #21) in opposition to the motion on February 22, 2011. Defendant filed a reply brief (Doc. #22) to plaintiff's opposition on March 8, 2011.

## II.     Legal Standards for Evaluating a Summary Judgment Motion[3]

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always

---

[2] Defendant submitted the following evidence: the deposition of Brett Mallory with attached exhibits (Exhibit A); the deposition of John Randall McIntyre with attached exhibits (Exhibit B); and the deposition of Michael Will (Exhibit C).

[3] Federal Rule of Civil Procedure 56 was amended on December 1, 2010. However, even with the 2010 amendments, "the standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56 Advisory Committee's Note (2010 Amendments).

bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(a) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman,* 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial). *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

### III.     Relevant Undisputed Facts[4]

#### A.     Background

Chemical Lime is engaged in the business of mining and processing limestone into quick lime products.  (Mallory Dep. at 9).  Plaintiff John Randall McIntyre was employed at Chemical Lime's O'Neal plant as a production supervisor from September 1996 until November 29, 2007. (Exhs. 2, 15 to McIntyre Dep.).  McIntyre's employment with Chemical Lime was terminated on November 29, 2007 after he tested positive for alcohol use in conjunction with a fitness for duty drug and alcohol test.  (Exh. 15 to McIntyre Dep.; Mallory Dep. at 28).  Chemical Lime contends that the positive test was a violation of the company's Drug and Alcohol Policy; McIntyre disputes that point. (Doc. #17, ¶ 3; Doc. #21, ¶3).

#### B.     Chemical Lime's Policies

Chemical Lime's Attendance policy for all non-bargaining unit employees provides as follows: "Employees that have been away from work for thirty (consecutive) days or more will be required to pass a company sponsored 'Fitness for Duty' drug screen prior to being reinstated to their regular job duties."  This policy is available for employees to review on the company intranet. (McIntyre Dep. at 127-128; Exh. 7 to McIntyre Dep.).  McIntyre admits that he was aware of this policy and knew that the policy requires than an employee submit to such test if absent from work for more than thirty consecutive days.  (McIntyre Dep. at 129-130, 165).

The Drug and Alcohol Policy states as follows: "[Chemical Lime] strictly prohibits . . . [b]eing under the influence of alcohol or any other drug on the job . . ."  (Exh. 11 to McIntyre Dep.).

---

[4] If the facts are in dispute, they are stated in the manner most favorable to the nonmoving party. *See Fitzpatrick*, 2 F.3d at 1115.

"Any employee who violates any provision of this Policy shall be subject to discipline, up to and including immediate dismissal, at the discretion of [Chemical Lime], even for a first-time offense." (McIntyre Dep. at 143-144; Exh. 11 to McIntyre Dep.).  "On the job" is defined as "whenever the employee is on Company Premises; using, occupying, or possessing Company Property; on Company time, whether on or off Company Premises (this includes, but is not limited to, travel on Company business and Company time, lunch breaks, rest breaks, and other breaks from normal duties); or on call."  (Exh. 2 to Mallory Dep. at 015).  "Under the influence" is defined as:

> An employee shall be considered "under the influence" whenever the employee's performance of his or her duties is impaired as a result of the voluntary introduction into the body of alcohol or any other drug.  An employee's performance of his or her duties is "impaired" when the employee is performing his or her duties below the level of skill at which the employee could have performed the duties but for the influence of alcohol or any other drug on the employee.  Where any applicable law provides that certain concentrations or levels of alcohol or any other drug in the body create a presumption that a person is intoxicated, impaired, or under the influence, an employee having that or a higher concentration or level of alcohol or other drug will be conclusively presumed for purposes of this Policy to be under the influence; however, an employee having a concentration or level of alcohol or drug that falls below the lowest concentration or level at which any presumption attaches under applicable law may still be considered under the influence if, in fact, the employee's performance of his or her duties is impaired as a result of the use of alcohol or any other drug.

(Exh. 2 to Mallory Dep. at 015).  All employees are subject to drug and alcohol testing.  (Exh. 11 to McIntyre Dep.).

Michael Will, a Production Supervisor during the relevant time period, testified that "at some point" the drug screen was changed to include alcohol.  (Will Dep. at 31).  However, the policy that was in place at the time of the termination of McIntyre's employment was in place at least since September 1, 2005.  (McIntyre Dep. at 149-150).  McIntyre's testimony on whether he was aware that he would be tested for alcohol is unclear:

Q:     So when somebody represents to you you're going to take a drug test,
       you assume it's drugs and alcohol?

A:     Uh-huh.  I mean after Chemical Lime, it was just always called a drug
       test.  Then they changed it, you know, to the alcohol/drug test.  From
       then on I assume that's what it was.

(McIntyre Dep. at 76).

Q:     And you thought it wasn't a big deal because it was just a .05?

A:     Yeah, I didn't think it was that big a deal.  I wasn't at work or
       scheduled to go to work or released to go to work.  And it's just a
       point, you know, oh five.

(McIntyre Dep. at 143).

Q:     So you don't think having a positive drug test was a problem?

A:     Drug test, yes.  But alcohol has never been an issue.  You know, if it
       was, there would have been a lot of people gone . . . You know, it's
       just alcohol has never been an issue on the test is what I'm saying.

(McIntyre Dep. at 147-148).

Q:     Were you aware – did you not think that you were going to be tested
       for alcohol?

A:     No.

Q:     So you didn't think –

A:     I didn't think I was going to be tested to the extreme that I was tested.
       They have never done it before.  They run me through a seven panel
       or whatever test.  They sent it off to find out what amount of
       prescription medication was in my system and everything.  And
       they've never done that before.  They said the policy was changed
       while I was off, and I wasn't made aware of it.  If I was, I wouldn't
       have had those drinks that night.

(McIntyre Dep. at 148-149).

Chemical Lime has applied its Drug and Alcohol Policy as a zero-tolerance policy, meaning

that all persons who test positive for drugs or alcohol (excluding noted prescriptions) are terminated.

(Mallory Dep. at 43; Will Dep. at 44; McIntyre Dep. at 190).  However, the policy reads as follows:

7

> Any employee who violates any provision of this Policy shall be subject to
> discipline, up to and including immediate dismissal, at the discretion of the
> Company, even for a first time offense.  Any employee who refuses to
> cooperate with the Company in the implementation of this Policy (for
> example, an employee who refuses to consent to a drug test) shall be subject
> to discipline, up to and including immediate dismissal.

(Exh. 2 to Mallory Dep. at 016).

## C.    McIntyre's Leave under the Family and Medical Leave Act

On August 22, 2007, McIntyre took a leave of absence to undergo hip replacement surgery.
(McIntyre Dep. at 108-109).  He informed Chemical Lime of his need to take leave under the Family
and Medical Leave Act ("FMLA") on September 19, 2007.  (Exh. 4 to McIntyre Dep.).  On
September 20, 2007, Chemical Lime approved McIntyre's request for leave running from August
22, 2007 to December 1, 2007.  (Exhs. 3, 4 to McIntyre Dep.; McIntyre Dep. at 110-111).  Sometime
in September of 2007, Chemical Lime informed McIntyre that he would have to take a drug test, in
accordance with the Attendance Policy, upon his return to work; McIntyre did not protest that
requirement.  (McIntyre Dep. at 118-119).

Chemical Lime informed McIntyre that he would receive salary continuance to run
concurrently with his FMLA leave for a medically certified period of up to twelve weeks.  (Exh. 4
to McIntyre Dep.).  McIntyre provided the company with a status update every thirty days while he
was on leave.  (McIntyre Dep. at 117-118).  Under the salary continuance, McIntyre received full
benefits and salary throughout his leave.  (McIntyre Dep. at 116-117).

## D.    The Drug Test

On either November 16 or 19, 2007, McIntyre informed Chemical Lime that he was ready
to return from his FMLA time and would like to return on November 26, 2007.  (McIntyre Dep. at

165-167).  He had a return to work slip from his doctor attesting to the same.  (McIntyre Dep. at 119).  McIntyre volunteered to take his fitness for duty drug test prior to November 26, 2007; this was McIntyre's idea so that he would be "ready to go" upon his return to work.  (McIntyre Dep. at 169-170).  Therefore, Chemical Lime made the appointment with Ideal Drug Testing for November 20, 2007.  (McIntyre Dep. at 137, 167-168).  This date was prior to the time McIntyre was officially released by his doctor to be back at work.  (McIntyre Dep. at 143; Exh. 5 to McIntyre Dep.).  Other than performing work duties in the action of going for the drug test, McIntyre did not perform duties associated with the production supervisor position on the day he was tested or the day following his test date.  (Mallory Dep. at 32, 40).

On the night of November 19, 2007 – the night before McIntyre's scheduled drug test – McIntyre stayed up until 1:00 in the morning drinking alcohol and playing cards with friends.  (McIntyre Dep. at 134-136).  McIntyre admits that he was drinking vodka and orange juice and had six to eight drinks, knowing that he was scheduled for the fitness for duty test the following morning.  (McIntyre Dep. at 134-136).  McIntyre also admits that, when he drinks hard liquor, he drinks more than he realizes.  (McIntyre Dep. at 97-98).

McIntyre submitted to the fitness for duty test on November 20, 2007 at approximately 10:40 in the morning.  (McIntyre Dep. at 132-133).  The results of that test indicated a positive result for ethanol with a blood alcohol level of 0.05%.  (McIntyre Dep. at 141-142; Exh. 11 to McIntyre Dep.).  Mike Will called McIntyre later that same day and informed McIntyre of the results of the test.  (McIntyre Dep. at 172-173).  Will told McIntyre that he was not to come to work on Monday because they had to investigate.  (McIntyre Dep. at 173).  McIntyre asked if this was going to be a

9

problem, and Will responded "I don't know."[5]  (McIntyre Dep. at 173).  McIntyre does not think that

the 0.05% blood alcohol level was "that big a deal."[6]   (McIntyre Dep. at 141-143).   Although

McIntyre had the option to have the specimen sample retested, he did not do so because he did not

question the validity of the results.  (McIntyre Dep. at 146-147).  McIntyre had never tested positive

on previous drug tests for Chemical Lime.  (McIntyre Dep. at 155-156).

### E.        Chemical Lime Terminates McIntyre's Employment

Upon receiving the results of McIntyre's drug test, McIntyre's direct supervisors, Michael

Will and Brett Mallory, met with a human resources representative and other members of

management.  (Mallory Dep. at 32-34).  On November 29, 2007, Will and Mallory held a meeting

with McIntyre to discuss the failed drug test.  (McIntyre Dep. at 176-177).  At the meeting, Will and

Mallory presented McIntyre with a corrective action form stating that Chemical Lime was

terminating McIntyre's employment.[7]  (McIntyre Dep. at 176-183; Mallory Dep. at 48).  During the

---

[5] Chemical Lime asserts that this fact is based on inadmissible hearsay, but did not file a motion to strike.  (*See* Doc. #22 at 2, ¶ 16).   Under Federal Rule of Civil Procedure 56(c) and *Macuba v. Deboer*, 193 F.3d 1316 (11th Cir.1999), affidavits and statements that would constitute hearsay, if reducible to admissible evidence, may be properly considered in support of a motion for summary judgment.  In *Macuba*, this Court stated that "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Id*. at 1323 (internal quotation marks omitted).  Regardless, the testimony is immaterial to the claims in this case, and has not been considered by the court.

[6] McIntyre testified that he was told by a female at Ideal Drug Testing that there should not be a problem with his employment because he had just tested a .05 for alcohol and he was not scheduled to work that day.  (McIntyre Dep. at 141-143, 172).  Although Chemical Lime asserts that this testimony contains inadmissible hearsay (*see* Doc. #22 at 2, ¶ 15), defendant has not filed a motion to strike on this point.  Regardless the testimony is immaterial to the claims in this case.  The female at Ideal Drug Testing is not a decision-maker at Chemical Lime.

[7] McIntyre testified that Mallory and Will told him that they "hated it" and they "did all they could do," but the decision was "from corporate and we've got to do what we're told to do."

course of his deposition, McIntyre admitted that he violated Chemical Lime's Drug and Alcohol Policy, saying "[y]eah, I violated it …So I [supposedly] broke a rule, but I didn't need to pay a penalty for it . . . I didn't know I was breaking a rule, but obviously it was a rule."  (McIntyre Dep. at 211-213).   He believes that the policy, however, should not be strictly applied to his particular situation because "I was not at work and not affected . . . I wasn't scheduled for work."  (McIntyre Dep. at 214).   McIntyre admits that Chemical Lime should have disciplined him for failing the test but thinks that the termination of his employment was excessive punishment.  (McIntyre Dep. at 179-180).

## IV.   Analysis

Under the FMLA, an eligible employee is entitled to take leave for "a total of 12 workweeks ... during any 12–month period" for "a serious health condition that makes the employee unable to perform the functions" of his position.  *See* 29 U.S.C. § 2612(a)(1)(C), (D).  Following FMLA leave, an employee has the right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position.  *Id*. at § 2614(a)(1).

---

(McIntyre Dep. at 179).  Chemical Lime asserts that this statement is immaterial and denied, and based on inadmissible hearsay.  (*See* Doc. #22 at 2, ¶ 19).  There is no motion to strike.  Regardless, whether Mallory and Will felt badly about the decision to terminate McIntyre's employment is not relevant to the claims made in this case.  The evidence is clear that neither Mallory nor Will were decision makers on the issue of whether company policy was violated.

An employee may raise two types of FMLA claims:[8] (1) interference claims, in which the employee alleges that his employer denied or interfered with an FMLA right, and (2) retaliation claims, in which the employee alleges that his employer discharged or discriminated against him for engaging in a practice protected by the FMLA. *See* 29 U.S.C. § 2615(a)(1), (2). Plaintiff's complaint does not clearly set out a theory for recovery under the Family and Medical Leave Act, stating only that Defendant "has violated the FMLA by terminating the plaintiff's employment during the leave period." (Compl., ¶ 8). Therefore, both theories will be considered in turn.[9]

## A.      Retaliation under the FMLA

In order to succeed on a retaliation claim under FMLA, a plaintiff must "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207; *see also Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). "In other words, a plaintiff bringing a retaliation claim faces the . . . burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Id.* (quotation omitted).

---

[8] The Eleventh Circuit has clarified that "[w]hile the FMLA does not clearly delineate these two claims with labels of 'interference' and 'retaliation,' those are the labels courts have used in describing an employee's claims under the Act." *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 n.9 (11th Cir. 2001). Though separate claims, they may be brought simultaneously. *See id.* at 1207 (holding that the district court erred by construing claim solely as a retaliation claim where plaintiff claimed his termination while on leave constituted both retaliation and a denial of his right to reinstatement under the FMLA).

[9] *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349 (11th Cir. 2000) (analyzing both causes of actions when the plaintiff did not specify which FMLA provision the employee was proceeding under).

"When evaluating a FMLA retaliation claim [in the absence of direct evidence],[10] we use the burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001). In order to establish a prima facie case, "a plaintiff must show that he engaged in statutorily protected conduct, he suffered adverse action, and there is a causal connection between the protected conduct and the adverse action." *Id.*; *see also Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) and *Schaaf*, 602 F.3d at 1243. "If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action." *BellSouth Telecomms., Inc.*, 273 F.3d at 1314. "If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual." *Id*.

### 1.     The *Prima Facie* Case of Retaliation

Chemical Lime does not dispute that McIntyre can satisfy the first two elements of the *prima facie* case – (1) he took leave under the FMLA and (2) his employment was terminated. (*See* Doc. #17 at 7-8). The company does, however, dispute the third element. It contends that there is no causal connection between the protected conduct and the adverse action. (*See* Doc. #17 at 8).

"In order to establish the requisite 'causal link' required as part of a *prima facie* case, a plaintiff need only establish that 'the protected activity and the adverse action were not wholly unrelated.'" *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *see also Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). That is, "a close temporal proximity between two events may support a finding of a causal connection between those two events[.]" *Wascura v.*

---

[10] Plaintiff concedes that this is not a direct evidence case. (*See* Doc. #21 at 14).

*City of S. Miami*, 257 F.3d 1238, 1244-1245 (11th Cir. 2001) (citing *Brungart*, 231 F.3d at 799)).

Here, a close temporal proximity between the protected conduct and the adverse decision are

undeniable – Plaintiff was on FMLA leave at the time his employment with Chemical Lime was

terminated.  (*See* Doc. #17 at 8; Doc. #21 at 16).  Under usual circumstances, "the close temporal

proximity between [the plaintiff's leave and the termination] . . . is more than sufficient to create a

genuine issue of material fact of causal connection."  *Schaaf*, 602 F.3d at 1243 (internal citations

omitted).  Nevertheless, Chemical Lime's argument is that the causal connection was broken in this

case by an intervening act – Plaintiff's testing positive for alcohol use on the fitness for duty drug

test.  (*See* Doc. #17 at 8; Doc. #21 at 16).

There do exist cases from other jurisdictions holding that intervening events can displace the

inference of causality created by close temporal proximity.  The parties have argued at length about

the applicability of one such case, *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665 (7th Cir. 2011).

In that case, the plaintiff's employment was terminated shortly after a request for leave was made

under the FMLA, but in the interim period, the plaintiff had tested positive for alcohol when taking

a drug and alcohol test in accordance with the company's policies.  *Ames*, 629 F.3d at 670.  That case

is distinguishable in many respects, and in any event, the Seventh Circuit's decision in *Ames* is not

binding authority on this court.  The Eleventh Circuit and district courts within this jurisdiction have

rejected retaliation claims where an "intervening act of misconduct …severed the causal connection

(if any) between [plaintiff's] initial complaint of discrimination and [defendant's] decision to

terminate her employment."  *Hankins v. AirTran Airways, Inc.*, 237 Fed. Appx. 513, 521 (11th Cir.

2007); *see also Rabb v. Georgia Pacific, LLC*, Slip Copy, 2010 WL 2985575 at *15, n. 35 (S.D. Ala.

July 26, 2010) ("This court additionally finds that any inference of a causal connection was broken

14

by [plaintiff's] misconduct."); *DeLeon v. ST Mobile Aerospace Engineering, Inc.*, 684 F.Supp. 2d 1301, 1325 (S.D. Ala. 2010) ("The Eleventh Circuit has made clear that even if a plaintiff is terminated in close temporal proximity to a complaint of discrimination, a plaintiff's intervening act of misconduct severs the causal connection between the employee's initial complaint of discrimination and the decision to terminate her employment."); *Penn v. USF Holland, Inc.*, 770 F.Supp. 2d 1211, 1240 (N.D. Ala. 2010) ("Even if [plaintiff] were to produce evidence that [defendant] knew of his complaint of discrimination, [plaintiff's] misconduct severed the causal chain."); *Hall v. AT&T Mobility Servs., Inc.*, Slip Copy, 2011 WL 3425642 at *9 (M.D. Fla. Aug. 5, 2011) ("[I]ntervening events can negate the inference of causation that may arise from temporal proximity."); *Martinez v. Workforce Cent. Fla*, 2008 WL 1806119 at *8 (M.D. Fla. 2008) ("Here, however, there was an intervening event between Plaintiff's protected activity and is suspension and termination – the independent complaint by a co-worker of an intimidating, threatening remark by Plaintiff.  This intervening event severed whatever inference of causation arose from the temporal proximity between Plaintiff's initial EEOC charge and his suspension and termination.").

Here, Chemical Lime contends there was an intervening event, and relies on the positive drug test both as the means to defeat McIntyre's *prima facie* case and as its legitimate, non-retaliatory reason.  The court will defer a decision as to the validity of that reliance until the pretext stage of the *McDonnell Douglas* analysis.  *See Hankins*, 237 Fed. Appx. at 520 ("Close temporal proximity between two events, standing alone, is not a panacea, absent any other evidence that the employment decision was causally related to the protected activity."); *see also Ogletree v. City of Auburn*, 619 F.Supp. 2d 1152, 1174 (M.D. Ala. 2009) (same).

### 2.      Chemical Lime has Articulated a Legitimate, Non-Discriminatory Reason for the Adverse Employment Action

The court assumes without deciding that McIntyre has established a *prima facie* case of FMLA retaliation.  Chemical Lime has articulated a legitimate, non-discriminatory reason for its decision to terminate McIntyre's employment.  As a prerequisite for returning to work after medical leave, McIntyre was required to take and pass a fitness for duty drug test.  McIntyre failed that drug test by testing positive for alcohol, and consequently his employment with Chemical Lime was terminated.

### 3.      There is no Evidence of Pretext

Under *McDonnell Douglas*, the burden then shifts back to McIntyre to show that Chemical Lime's supposedly independent reason for the termination was, in reality, a pretext for discrimination.  To satisfy this burden, McIntyre must present evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008); *see also Combs*, 106 F.3d at 1528 (stating that a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder would find them unworthy of credence.").  Suspicious timing alone rarely is sufficient to create a triable issue.  *See Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

McIntyre argues that Chemical Lime's reasons were merely pretextual.  In particular, he asserts that there are questions of fact in two areas: (1) whether the company's drug and alcohol policy is "zero tolerance"; and (2) whether McIntyre actually violated that policy.  (Doc. #21 at 21-

16

23).   Although the court has deferred its analysis until this stage of the model, whether these arguments are couched as relevant to the *prima facie* case or the pretext inquiry, they fall short of establishing a material issue of fact in this case.

As to the first point, Plaintiff asserts that the testimony of Brett Mallory and Michael Will conflicts with the written policy itself.  The policy states that anyone in violation therewith "shall be subject to discipline, up to and including immediate dismissal, at the discretion of the Company, even for a first time offense."  (Exh. 2 to Mallory Dep.).  The policy's language does not, on a common sense level, purport to read as a strictly zero tolerance policy.  But Mallory and Will testified they have never heard of anyone at Chemical Lime who tested positive on a drug screen and remained employed with the company.  (Mallory Dep. at 43; Will Dep. at 44).  Plaintiff himself testified that he knows of no one at Chemical Lime who retained their employment with the company after testing positive on the drug screen.  (McIntyre Dep. at 190).  Thus, notwithstanding the fact that the policy can fairly be interpreted differently to be something other than one of zero tolerance, Chemical Lime can interpret and apply its policies in any manner it sees fit, so long as that interpretation and application is not retaliatory.  *See e.g. Davis-Dietz v. Sears, Roebuck & Co.*, 284 Fed. Appx. 626, 630-631 (11th Cir. June 27, 2008) ("The key issue is whether [defendant] actually believed its proffered reason – not that [defendant's] reading of the policy is accurate or that [defendant] applied the policy correctly – and whether the real reason [plaintiff] was fired was due to unlawful discrimination."); *Jones v. Ala. Power Co.*, 282 Fed. Appx. 780, 784 n.4 (11th Cir. June 23, 2008) ("[A]n employer has the 'right to interpret its rules as it chooses' and 'make determinations as it sees fit under those rules.'") (citing *Maniccia v. Brown*, 171 F.3d 1364,1369 (11th Cir. 1999)); *Diaz v. Transatlantic Bank*, 367 Fed. Appx. 93, 97 (11th Cir. Feb. 24, 2010)

(when analyzing pretext, noting that defendant's change of the employees' medical insurance was a uniform switch for all employees); *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (a plaintiff cannot merely quarrel with the wisdom of the employer's reason, but "must meet the reason head on and rebut it."); *Wilson v. B/E Aero., Inc.*, 376 F.3d1079, 1088 (11th Cir. 2004) ("Quarreling with [the] reason is not sufficient.").

There can be no retaliation here because Chemical Lime has consistently interpreted its policy as one of zero tolerance.  To borrow a witticism from the late Judge Nelson, the court does not sit as the Chief Personnel Officer of the Northern District of Alabama.  It is emphatically not for this court to decide whether Chemical Lime acted wisely in interpreting its policy strictly in the case of Mr. McIntyre.  *See Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law.  We are not in the business of adjudging whether employment decisions are prudent or fair.").

McIntyre's second theory on retaliatory motive is that questions of fact exist as to whether McIntyre actually violated the policy.  (*See* Doc. #21 at 23-24).  "While the policy does prohibit the mere 'use' of illegal drugs or controlled substances on the job, it only prohibits being under the influence of alcohol on the job.  Based on a plain reading of the policy, just the fact that alcohol is present in the blood stream does not automatically mean that the policy has been violated."  (Doc. #21 at 22).  Plaintiff emphasizes that he was not "on the job" on the day of the drug screen, nor performing the functions of the Production Supervisor position the day of the drug screen.  (Doc. #21 at 22).

18

Plaintiff is absolutely correct that the policy reads this way, and that reasonable minds could differ on the question of whether an actual violation of the policy occurred. But unfortunately for him, that is not the relevant inquiry to be made in the court's pretext analysis. Rather, what is important here is whether there is substantial evidence that Chemical Lime *believed* that McIntyre violated the policy.[11] *See Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004) (stating that the "relevant issue here is not whether [plaintiff] actually falsified the entry, but rather whether [defendant] actually believed [plaintiff] falsified the entry."); *see also Damon*, 196 F.3d at 1363 n.3 ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."). McIntyre himself (to his credit) has never denied that he drank alcohol the night before the drug test nor the that he failed the drug test. (McIntyre Dep. at 211-212). Again, the company is entitled to interpret its policy however it sees fit, so long as it is not interpreted in an unlawful fashion. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (stating an employer may fire an employee for a good or bad reason, a reason based on erroneous facts, or for no reason at all, as long as its reason is not discriminatory).

McIntyre has failed to show that Chemical Lime's legitimate, non-retaliatory reason for terminating his employment was pretextual. Defendant's motion for summary judgment, as it relates to Plaintiff's claim for FMLA retaliation, is due to be granted.

---

[11] Interestingly, there is no evidence before the court as to *who* specifically made the decision that the company's drug policy had been violated in the case of the Plaintiff. Mallory testified that "the information on the test for the results of the drug test go to the HR department, and then through the HR department, they notify the plant management and the policy is followed." (Mallory Dep. at 25). Mallory further testified that the policy has always been applied "by the company" as one of zero tolerance. (Mallory Dep. at 27-28).

**B.      Interference under the FMLA**

It is easier for an FMLA plaintiff to establish a claim of interference than one of retaliation. To state an interference claim, an employee need only show that his employer interfered with or denied him an FMLA benefit to which he was entitled. *See O'Connor*, 200 F.3d at 1353–54. The employee "does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland*, 239 F.3d at 1208. However, if the employee alleges that the employer denied the employee the right to reinstatement following FMLA leave, "the employer has an opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave." *O'Connor*, 200 F.3d at 1354 (citing 29 C.F.R. § 825.216(a)); *see also Schaaf*, 602 F.3d at 1241. If the employer shows it refused to reinstate the employee "for a reason wholly unrelated to FMLA leave, the employer is not liable." *Strickland*, 239 F.3d at 1208.

The analysis does not involve application of a "but for" test. *See Schaaf*, 602 F.3d at 1242 ("In an FMLA interference case, courts examine not whether the FMLA leave was *but-for* cause of an employee's discharge or demotion, but rather whether it was the *proximate* cause.") (emphases in original). The fact that FMLA leave may allow an employer to uncover prior deficiencies does not mean that the employee was fired *because of* the FMLA leave. *See Schaaf*, 602 F.3d at 1242 (citing *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001) and *Wu v. Se.-Atl. Beverage Corp.*, 321 F.Supp. 2d 1317, 1341 (N.D. Ga. 2004) ("[T]he fact that plaintiff's leave is what permitted [the employer] to discover the problems with plaintiff's work performance is of no consequence. Although one could say that plaintiff might not have been demoted if he had not taken leave (at least not at that time), the leave was not the proximate cause of the demotion.")). In such

20

a situation, the employer is motivated not by the taking of the leave itself, but rather by the deficiency.[12]  *See Schaaf*, 602 F.3d at 1242.

Here, it is undisputed that Chemical Lime refused to let McIntyre return to his former position after his FMLA leave ended.  Thus, McIntyre made a prima facie showing of FMLA interference with his right to reinstatement.  *Leach v. State Farm Mut. Auto. Ins. Co.*, Slip Copy, 2011 WL 2118723 at *4 (11th Cir. May 27, 2011) (citing *Schaaf*, 602 F.3d at 1241 (stating that an FMLA plaintiff 'made a prima facie showing of an FMLA interference claim, in that she demonstrated she was not reinstated' to her former position)).  But the inquiry does not end there. Chemical Lime has presented evidence that it refused to reinstate McIntyre because of his failure to pass a return to work fitness for duty drug test.  (McIntyre Dep. at 129-130, 158-159, 165, 211-212). Chemical Lime's reason for refusing to reinstate McIntyre is sufficient to raise its affirmative defense to the interference claim.  *See Strickland*, 239 F.3d at 1206.

McIntyre's arguments that a reasonable jury could conclude that the termination was related in some way to the FMLA leave fall short.  Although careful not to word it so, a large portion of his interference argument is that "but for" the FMLA leave, his employment would not have been terminated.  (*See* Doc. #21 at 24, 25) ("The evidence is clear that McIntyre would not have been

---

[12] As stated in *Schaaf*:

> The distinction between but-for and proximate causation makes good sense in the FMLA context.  Holding that but-for causation is somehow sufficient to support an FMLA claim would permit wanton abuse of the FMLA with perverse consequences . . . [Plaintiff's] suggested reading of the statute would effectively protect deficient employees from adverse employment actions, such that those workers could actually attain job security by seeking leave under the FMLA.

602 F.3d at 1242.

required to take the 'fitness for duty' drug and alcohol screen except for the fact that he was out on FMLA leave.  There is no evidence that absent his surgery and FMLA leave, that McIntyre would have been out during this time period and would have been required to take the drug screen . . . [T]here would have been no need for the drug screen absent the FMLA leave.").  Of course, that is not the relevant inquiry with an interference claim.  *See Schaaf*, 602 F.3d at 1242.  Moreover, Chemical Lime's policy requiring a drug and alcohol test to be taken before returning to work applies to *all* types of extended absences of thirty or more days, whether those absences are due to FMLA leave or personal leave.  Even McIntyre himself admits that this is the policy and that the right to reinstatement is not absolute.  (McIntyre Dep. at 127-128; Exh. 7 to McIntyre Dep.).

The second portion of McIntyre's pretext argument is that he did not actually violate the policy as written and that he was not technically on the job when he tested positive for alcohol use. (*See* Doc. #21 at 25) ("[W]hile Plaintiff did have alcohol in his system, this did not automatically result in a violation of the Chemical Lime Drug and Alcohol policy.  Plaintiff was not at work – he was out on leave.  There has been no showing that he was unable to perform his job duties.  Finally, the amount of alcohol in question did not violate state law in regards to impaired driving.").  These arguments also miss the mark.  McIntyre himself admits that he violated the policy.[13]  (McIntyre Dep. at 141-143, 179-180, 211-212).  He drank several vodka drinks the night before his test, and

---

[13]  *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("when conflicts arise between the facts evidenced by the parties, we credit the nonmoving parties *version*.  Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided."); *see also Linn v. St. Mobile Aero. Eng'g, Inc.*, No. 07-0377-WS-M, 2008 WL 2945558 at *6, n. 21 (S.D. Ala. 2008) (noting that plaintiff "effectively backs himself into a corner by relying on a theory that contradicts his own deposition testimony").

consequently failed the test. (McIntyre Dep. at 134-136, 141-142, 211-212). His termination was the result of a policy consistently applied as one of zero tolerance.[14] (Mallory Dep. at 43; Exh. C to Will Dep.; McIntyre Dep. at 143-144, 190). True, McIntyre was not actually on the job in the sense that he was on the plant floor, but he was on the job in the sense that he was directed by Chemical Lime to take the test and was earning a salary while doing so. Regardless, this is the way Chemical Lime has consistently applied its policy – considering employees to be on the job when they submit to a drug and alcohol test. There is simply no evidence to the contrary. Chemical Lime's enforcement of the policy then, perhaps harshly (but certainly not illegally) in this instance, led to the termination of McIntyre's employment. The purpose of the FMLA is not to put an employee in a better position or give an employee greater rights to benefits and conditions of employment than if the employee had been continuously employed with the company during the FMLA leave period or took some leave other than FMLA. *See Standifer v. Sonic-Williams Motors, LLC*, 401 F.Supp. 2d 1205, 1222 (N.D. Ala. 2005) (Hancock, J.) (citing *O'Connor*, 200 F.3d at 1354). The Rule 56 record is undisputed that the drug and alcohol test must be passed by all employees and that no one has ever remained employed by Chemical Lime after failing the drug and alcohol test. (McIntyre Dep. at 149-152). If Chemical Lime were to ignore McIntyre's positive test and reinstate his employment, McIntyre would be privy to a greater benefit than anyone else has received at Chemical Lime. The FMLA dictates no such preferential treatment.[15]

_____

[14] That is, Chemical Lime did not deviate from its policy in any way by terminating McIntyre's employment after the positive drug test. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) (noting that an employer's deviation from its established policies may serve as evidence of pretext).

[15] The court is not unsympathetic to McIntyre who, on his own volition, submitted to the drug test before his official return to work date and "didn't think [he] was going to be tested to the

For the foregoing reasons, Chemical Lime's motion for summary judgment, as it relates to McIntyre's FMLA interference claim, is due to be granted. *See Schaaf*, 602 F.3d at 1241, 1243 (affirming district court's entry of judgment as a matter of law where the plaintiff did not present evidence contradicting her employer's reason for demoting her after she returned from FMLA leave); *see also Krutzig v. Pulte Home Corp.*, 602 F.3d 1231 (11th Cir. 2010) ("This court has previously concluded that, if an employer can show that it refused to reinstate an employee for a reason unrelated to FMLA leave, the employer is not liable for failing to reinstate the employee after the employee has taken FMLA leave."); *Baldwin v. Hyundai Motor Mfg. Alabama, LLC*, Slip Copy, 2009 WL 973084 at * (M.D. Ala. April 10, 2009) ("An employer, however, may present an affirmative defense and deny a substantive right if it can demonstrate that it would have discharged the employee had [he] not been on FMLA leave.") (internal citations and quotations omitted).

---

extreme that [he] was tested." (McIntyre Dep. at 148, 166). In fact, the court will go so far as to say that another employer – indeed, even a more reasonable or compassionate employer – would no doubt have offered McIntyre an opportunity to retake the test before terminating his employment, perhaps on the actual day McIntyre was scheduled to begin working. (*See* Doc. #22 at 9, n.4) ("The facts, however, are that McIntyre could have submitted to the drug and alcohol test on the morning he planned to return to work, but instead he voluntarily chose to submit a sample a week before he was due to return. He should not be allowed to now claim that his failed test was invalid because he voluntarily chose the time he wanted to take the drug and alcohol test."). But how another employer would react – and indeed, what is "fair" here – is not the question. Again, this court does not, and cannot, sit as a super-personnel board to re-examine the decisions of the company. *See Damon*, 196 F.3d at 1361; *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting courts do not reexamine an employer's business judgment and that the key inquiry is "whether the employer gave an honest explanation of its behavior"). The fact remains that McIntyre's rights under the FMLA were not interfered with by his termination.

## V.       Conclusion

For the reasons asserted above, there being no dispute as to any material fact, Defendant

Chemical Lime Company's Motion for Summary Judgment (Doc. #16) is due to be granted.  A

separate order will be entered dismissing all claims.

**DONE** and **ORDERED** this _____8th_____ day of September, 2011.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE